**FIRST DIVISION**
**DOYLE, C. J.,**
**BOGGS and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2016**

# In the Court of Appeals of Georgia

A15A1682. LEWIS v. MCNEELY et al.                                        BO-083

A15A1683. MCNEELY et al. v. MEDI-SOURCE, INC. et al.          BO-084

BOGGS, Judge.

These consolidated appeals follow a bench trial on the sole issue of the award of a set-off against a judgment. Because it appears that the trial court erred with regard to a stipulation, and we cannot determine from the order on what basis the trial court awarded the set-off, we reverse in part, vacate in part, and remand these cases with direction.

"In a bench trial the court sits as the trier of fact and his findings shall not be set aside unless clearly erroneous. The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." (Citations and punctuation omitted.) *CRS*

*Sirrine, Inc. v. Dravo Corp.*, 213 Ga. App. 710, 721 (4) (445 SE2d 782) (1994). And "we apply a de novo standard of review to any questions of law decided by the trial court . . . ." (Citations and punctuation omitted.) *Memar v. Jebraeilli*, 303 Ga. App. 557, 558 (694 SE2d 172) (2010).

The relevant facts are as follows. In March 2007, Thomas McNeely, his wife Susan McNeely and his sister-in-law Marie Wyrwa, Edwin Lewis, Charles Ellis, Scott Harelson and Medi-Source, Inc. ("MSI") obtained a loan in the amount of $700,000 from Security Bank and Trust Co. ("SB&T") and executed a promissory note. The funds were to cover inventory and provide working capital for MSI, a medical supply company. In June 2009, MSI executed a promissory note for a line of credit in the amount of $1,250,000, guaranteed by the McNeelys, Wyrwa, Lewis, and Ellis. In July 2009, Lewis, MSI, and Ellis signed an agreement to indemnify the McNeelys and Wyrwa for any liability or obligation under the $700,000 promissory note, upon the McNeelys' and Wyrwa's payment of their respective portions of the loan. Lewis testified that in executing the indemnity agreement, he, MSI and Ellis, were allowing the McNeelys and Wyrwa "to pay their portion in advance and be taken off the note at [SB&T]."

On May 7, 2010, Ellis filed a petition for bankruptcy. Ten days later, on May 17, 2010, the McNeelys and Wyrwa paid off the full balance of $588,476.18 due under the $700,000 loan and were assigned the promissory note. The next day they sued Lewis and MSI for this amount under the indemnity agreement asserting that Lewis and MSI failed to make their annual payment when due. Lewis answered and counterclaimed for contribution, breach of fiduciary duty, and breach of covenant of good faith and fair dealing, and also filed a cross-claim against MSI.

Between December 2010 and June 2011, MSI made payments totaling $101,604.91 on the $1,250,000 line of credit, and between November 2010 and June 2011 received $21,514.60 from ISL, the company that purchased MSI in 2010. On June 28, 2011, the McNeelys and Wyrwa paid off the $260,096.91 remaining balance on the $1,250,000 line of credit and were also assigned this promissory note.[1] In the months following this pay off, Wyrwa received more than $60,000 from MSI.

On June 30, 2011, the trial court granted summary judgment to the McNeelys and Wyrwa on their claim against Lewis and MSI under the indemnity agreement and awarded them $588,476.18. During the subsequent 2014 bench trial on Lewis'

---

[1]The McNeelys and Wyrwa filed a complaint against Lewis and MSI arising out of this promissory note, seeking contribution from them in their capacity as guarantors. That case is currently pending in the superior court of another county.

counterclaim, a forensic accountant testified that in addition to other amounts, the $101,604.91 paid toward the line of credit, the $21,514.60 from ISL, and the $63,478.37 paid to Wyrwa,[2] could have been applied to reduce the $588,476.18 judgment on the indemnity agreement to decrease Lewis' exposure. Following the trial, the court issued an order awarding a $183,199.51 set-off against the $599,544.96 ($588,476.18 plus attorney fees) judgment against Lewis and MSI. It is from this ruling that both parties appeal.

In Case No. A15A1682, Lewis appeals, arguing that he is entitled to be completely discharged from the prior judgment because the McNeelys and Wyrwa increased his risk of liability under the indemnity agreement, that in the alternative, he was entitled to an additional set-off of $66,117.52, and that the trial court erred in denying his request for attorney fees. In Case No. A15A1683, the McNeelys and Wyrwa appeal, arguing that while they agreed to a set-off of $60,000 for the payments made to Wyrwa, the court erred in allowing a set-off of the additional $123,119.51.

The trial court's order provided in relevant part:

_____

[2]The parties later stipulated that this amount was $60,000.

4

The court determines that Lewis is entitled to a set-off against the judgment previously entered against him in the amount of $186,597.88.[3] The court's finding is based upon the following:

(A) *Stipulated Above the Line Set-off.*

Lewis claims an entitlement to a set-off of receivables which were paid to plaintiffs and/or towards the second line of credit, as well as those receivables not immediately disbursed.

The plaintiffs have essentially stipulated to this set-off and, therefore, the court need not address the legality of the set-off. Nonetheless, the court is persuaded that Georgia law would allow such an off-set, even without stipulation, to the extent that "above-the[-]line" items were applied to the detriment of Lewis. OCGA § 13-7-1.

It is not disputed that $101,604.91 was paid towards the line of credit and $60,000 was paid to Wyrwa. The court also finds that plaintiffs are entitled to the "above the line" receivables which were not readily disbursed in the amount of $21,517.60[4] for a total set-off of [$183,119.51].

---

[3]This amount was corrected to $183,119.51 later in the trial court's order.

[4]This amount was corrected to $21,514.60 later in the trial court's order.

5

1. The trial court's order provides that the McNeelys and Wyrwa stipulated to "this set-off," referring to the total amount awarded set forth in the first paragraph of its legal findings. But the transcript reveals that the McNeelys and Wyrwa stipulated to a set-off of only the $60,000 paid to Wyrwa.[5] Because the trial court clearly erred in its finding that the McNeelys and Wyrwa stipulated to the entire set-off it awarded, we reverse this portion of the judgment. See, e. g., *Blue v. Hemmans*, 327 Ga. App. 353, 359 (1) (759 SE2d 72) (2014) (court clearly erred in factual findings); *Wetherington v. Wetherington*, 291 Ga. 722, 728 (3) (732 SE2d 433) (2012) (court erred in concluding that wife owed husband an amount more than what was stipulated to).

2. Considering then only the remaining $123,119.51 of the set-off, the trial court stated that "Georgia law would allow such an off-set," and cited to OCGA § 13-7-1. That Code section provides: "Setoff does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff." But the evidence showed that the amount awarded by the court was not a set-off of a *debt owed* to Lewis and MSI by the McNeelys and

---

[5]The court stated in the next paragraph of its order, however, that "[n]ot all of the 'above the line items were stipulated as a set off,' apparently referring to another $66,117.52 requested by Lewis.

Wyrwa. See OCGA § 13-7-1; OCGA § 13-7-7 through OCGA § 13-7-11 (allowances for set-off, none of which are applicable here). Thus, to the extent the trial court awarded a legal set-off from the final judgment, such ruling would be error.

But, we cannot definitively determine from the court's order whether it was awarding a legal set-off or an equitable set-off based upon its general statement that "Georgia law would allow such an off-set."[6] See OCGA § 23-2-76 (equitable set-off statute); see also *Bank of the Ozarks v. DKK Dev. Co.*, 315 Ga. App. 539, 541 (726 SE2d 608) (2012) (explaining distinction between legal and equitable set-off).[7] For

[6] It would appear that an equitable set-off would invoke the jurisdiction of the Georgia Supreme Court. See *Beauchamp v. Knight*, 261 Ga. 608, 609 (2) (409 SE2d 208) (1991) (Georgia Supreme Court has appellate jurisdiction in all equity cases; "Whether an action is an equity case for the purpose of determining jurisdiction on appeal depends upon the *issue* raised on appeal, not upon how the case is styled nor upon the kinds of relief which may be sought by the complaint. That is, equity cases are those in which a substantive issue on appeal involves the legality or propriety of equitable relief sought in the superior court -- whether that relief was granted or denied." (Punctuation omitted; emphasis in original.)); see also *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 456 (1) (a) and 457 (1) (a) n.3 (369 SE2d 736) (1988) (enforcement of a judgment may be enjoined under equitable set-off; equitable set-off "provides an exception to the strictures of legal set-off"); *Miller v. Smith*, 136 Ga. 117 (70 SE 887) (1911) (equitable petition seeking to have equitable set-off against judgment).

[7] We note that while in *Bank of the Ozarks*, supra, the trial court granted what it considered to be "equitable set-off," and the Bank argued that DKK had "unclean hands" and was not entitled to equitable relief, our court ruled only that the set-off was improper because the Bank and Holding Company were separate entities, and

7

this reason, we vacate the court's judgment and remand this case for clarification of the basis for the set-off. See *Haney v. Camp*, 320 Ga. App. 111, 113 (1) (739 SE2d 399) (2013) (remand for trial court to clarify ruling with respect to attorney fees); *Memar*, supra, 303 Ga. App. at 562-563 (2) (b) (reversing award of damages and remanding with direction for trial court to demonstrate how award was calculated).

*Judgment reversed in part and vacated in part; and cases remanded with direction. Doyle, C. J. and Mercier, J., concur.*

---

that whether a set-off is legal or equitable in nature, "it must be between the same parties in their own right." 315 Ga. App. at 540-541.