1. In an action on an account for the purchase-price of merchandise delivered and not paid for, memoranda containing description of merchandise, date of delivery, unit price, amount delivered, amount due, receipt therefor, etc., are not inadmissible in evidence because other parties than both seller and buyer are named therein, parol evidence being admissible to show who sold the merchandise described therein, who bought it, and to whom it was delivered. Such memoranda are admissible for the purpose of showing the amount of merchandise delivered, the unit price charged therefor, the amount due, and for the purpose of otherwise *Page 82 
corroborating testimony of witnesses respecting the transactions involved.
2. In an action on an account for the purchase-price of merchandise delivered and not paid for, a statement of the account taken from the books of the plaintiff is not inadmissible in evidence as a self-serving declaration, where, on the trial there is evidence that such statement had been submitted to the defendant prior to the bringing of the suit and the justness of the account as disclosed by such statement is admitted by him. Such statement is admissible in evidence for the purpose of identifying the account which the witness testified the defendant admitted as being just and due.
 DECIDED OCTOBER 31, 1947.
E. T. Anderson commenced an action against M. H. McKnight, a resident of the State of South Carolina, for the collection of an account in the sum of $429.27 for gasoline and tractor fuel alleged to have been delivered to the defendant and on his order, by the plaintiff. This action was commenced in Lincoln County on September 7th, 1946, by original attachment which was levied upon certain land belonging to the defendant and located in said county. On the same date notice of said attachment was given the defendant by the Sheriff of Lincoln County and thereafter the plaintiff filed a declaration in attachment, in which it is alleged that M. H. McKnight, doing business as Cherokee Mining Company, is indebted to the plaintiff in the sum of $429.27, said declaration alleging the dates, quantities, unit price, and amounts of sales of gasoline and tractor fuel totaling the sum claimed to be due; the declaration also alleged payment of account has been demanded and defendant has refused and neglected to pay the same. The defendant filed an answer to said declaration on October 16th, 1946, in which he denied the indebtedness, denied any demand on him and his refusal or neglect to pay; the answer admitted the levy of the attachment on the property described in the declaration and denied that the defendant was doing business as the Cherokee Mining Company. The case came on for trial at the April term of the Superior Court, Lincoln County. There was no dispute in the evidence as to some of the issues while others were in sharp conflict. However, whether in conflict or not, the jury trying the case was authorized to find from the evidence, facts substantially as follows: That the Cherokee Mining Company was a corporation, having procured its charter *Page 83 
by order of the Superior Court of Lincoln County, June 5th, 1942, on the petition of L. L. Heaton, W. G. McGuire, and Ed Rawls; that the corporation was created for the purpose of engaging in mining, milling, manufacturing and refining manganese, etc.; that said corporation had a lease on the mineral rights of the lands upon which the attachment herein referred to was levied. Under the direction of L. L. Heaton, its president, said corporation procured certain mining machines and equipment and was undertaking to mine manganese from this property during the year 1942 or 1943, when the defendant herein loaned said corporation the sum of $8000. Thereafter and from time to time the defendant extended loans to said corporation until 1944 he had advanced the corporation approximately the sum of $30,000. He then bought the assets of the corporation, including the mineral lease and bought the land upon which the attachment was levied, from Mr. Boykin; that it was agreed between Mr. Heaton, president of the corporation, and himself that the defendant herein would be the secretary-treasurer of the corporation, but he never became an officer or stockholder. In an effort to retrieve the money advanced to the corporation the defendant and Mr. Heaton jointly continued with the mining operations until Mr. Heaton took one of the automobiles of the corporation and left. Mr. Heaton never returned. The date he left is not disclosed by the record, but the testimony regarding his activities in connection with the mining operations would indicate that he left late in the year 1944 or early in the year 1945. Mr. Rawls, one of the incorporators, appears never to have taken an active part in the enterprise. Mr. McGuire became a serviceman in the armed forces before the defendant had any connection with the corporation, and up until the time of his departure Mr. Heaton, the president, acted also as general manager. After Mr. Heaton's departure the defendant continued in his efforts to mine manganese from the property and was assisted by at least one person, viz., F. A. Hardy. It appears that in November, 1946, J. H. Dorn also worked there. The plaintiff was distributor during all the time covered herein for the Standard Oil Company of Kentucky, his place of business being located in Washington, Wilkes County; the connection between the plaintiff and the Standard Oil Company of Kentucky *Page 84 
was that plaintiff would buy petroleum products from the Standard Oil Company of Kentucky wholesale, and distribute same over his territory at retail. Merchandise could not be sold on the credit of the Standard Oil Company unless applied for, and approved by this company. All merchandise sold by plaintiff on credit not arranged through Standard Oil Company was credit extended by plaintiff and constituted a transaction only between plaintiff as creditor and the purchaser as debtor. All the merchandise involved in this suit was sold on credit extended by the plaintiff and falls within the latter classification. After the Cherokee Mining Company secured its charter plaintiff sold it petroleum products for approximately two years on order of L. L. Heaton, its president. For several months before Mr. Heaton left, the company had been falling behind with payments on its account with plaintiff. Before Mr. Heaton left and after Mr. McKnight, the defendant, became active in the operation of the mining enterprise, plaintiff learning of Mr. McKnight's connection and interest, discussed with Mr. McKnight the matter of cutting off future deliveries. Thereupon, Mr. McKnight told plaintiff to continue making the deliveries as he was going to have to take the enterprise over himself. Thereafter, and until Mr. Heaton left, Mr. McKnight personally paid the Cherokee Mining Company's account which the plaintiff incurred with Mr. Heaton. After Mr. Heaton left, the original account of the Cherokee Mining Company, as kept on the books of the plaintiff, was changed to Mason H. McKnight; monthly statements were sent directly to the defendant at his home in North Augusta, South Carolina, and checks payable to the Standard Oil Company, were forwarded to the plaintiff in payment by M. H. McKnight Construction Company. The defendant began to fall behind with his payments of this account and from time to time the plaintiff would either phone or call upon the defendant and discuss the account with him. In January, 1946, the defendant had gotten more than two months behind with the account and the plaintiff declined to extend further credit. At that time sufficient deliveries of merchandise had been made to the premises where the Cherokee Mining Company had operated, on the order of the defendant and receipted for by F. A. Hardy, except as to *Page 85 
one shipment receipted by Mr. Dorn, to total the amount of $429.27. Thereafter the plaintiff took an itemized statement of this account to Mr. McKnight seeking payment, and Mr. McKnight, while not paying it, acknowledged to the plaintiff that it was a just and due obligation. The plaintiff's original books were introduced in evidence as were a number of documents. On the trial of the case the jury returned a verdict in favor of the plaintiff in the sum of $429.27. The court entered a judgment thereon in favor of the plaintiff based on this verdict. Thereafter the defendant filed a motion for a new trial on the general grounds, which was later amended by adding two special grounds. The first special ground complained of the introduction of thirteen pieces of documentary evidence, numbered exhibits 4 to 16, which were in the nature of sales tickets headed, "Standard Oil Company, Incorporated in Kentucky;" containing also, "Sold to Cherokee Mining Company." Among other things these documents show the type of merchandise, for instance "Crown Gasoline," the number of gallons, the price per gallon, the total amount of sale, and an acknowledgement of the receipt of the same, signed by F. A. Hardy for the purchaser as to all of the exhibits except one which was signed for the purchaser by J. H. Dorn. These thirteen sales tickets were objected to on grounds that the evidence showed that the Cherokee Mining Company was a corporation, that Hardy was an employee of this corporation, that the evidence showed that the Cherokee Mining Company was a corporation, that Hardy was an employee of this corporation, that the evidence seeks to change a written contract, because the charges are shown to be against the corporation and not against the defendant, that the same undertakes to collaterally attack the corporate status of the Cherokee Mining Company.
The second special ground complained of the introduction by the plaintiff of a statement of the account contended by the plaintiff to be due him from the defendant, which statement is substantially the same as to dates, etc., as the itemized account set up in the declaration and is in the same amount. The introduction of this statement is objected to on the ground that it seeks to change the terms of a written contract between Standard Oil Company and Cherokee Mining Company, counsel for defendant contending that the sales tickets referred to in special ground 1 constitute such written contract; on the further ground *Page 86 
that the same seeks to change entries of original charges made against Cherokee Mining Company, to the defendant doing business as Cherokee Mining Company; and that the same constitutes a self-serving declaration. Upon the hearing, the trial judge entered judgment overruling the defendant's motion for a new trial as amended and on this judgment error is assigned.
1. The jury was authorized to find that the 13 pieces of documentary evidence describing the merchandise sold, the date of delivery, the unit price, the amount delivered, the amount due, receipt therefor, etc., and containing the name, "Standard Oil Company, Incorporated in Kentucky," as the seller, and "Cherokee Mining Company" as the buyer, constitute mere memoranda relating to the deliveries of the merchandise. The jury was also authorized to find that the contract for the purchase and sale of this merchandise was made between the plaintiff and the defendant. These 13 pieces of documentary evidence are not inadmissible for any of the reasons complained of, but are admissible for the purpose of showing the amount of merchandise delivered, the unit prices charged therefor, the amount due, and for the purpose of corroborating the testimony of witnesses respecting the transactions involved. Ground 1 of the amended motion is without merit.
2. In an action on an account for the purchase-price of merchandise delivered and not paid for, the admission by the defendant of the correctness of the account is sufficient to support a verdict in favor of the plaintiff. See Taylor v.Stearns Coal Co., 44 Ga. App. 662 (2) (162 S.E. 838);Scott v. Kelly Springfield Tire Co., 33 Ga. App. 297
(125 S.E. 773); Elliot v. National Union Radio Corp. 68 Ga. App. 873
(24 S.E.2d 705). In the instant case the jury was authorized to find that the defendant had admitted this account when presented with the identical statement of it, admitted in evidence and complained of in special ground 2 of the amended motion. This statement was not inadmissible for any of the reasons specified. It was admissible for the purpose of identifying the account which the plaintiff claimed in his testimony the defendant admitted as being *Page 87 
just and due. Ground 2 of the amended motion is without merit.
The evidence being sufficient to support the verdict, and the special grounds not showing cause for a new trial, the judgment of the trial court overruling defendant's motion for a new trial as amended, is without error.
Judgment affirmed. MacIntyre, P. J. and Gardner, J. concur.